FILED
CLERK, U.S. DISTRICT COURT

DEC 3 1 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EMILY Q. et al., | ) | CASE NO. CV 98-4181 AHM (AJWx) |
| Plaintiffs, | ) | **SUPPLEMENTAL REPORT IN RESPONSE TO COURT'S ORDER REGARDING SPECIAL MASTER SALETTA'S BUDGET PROPOSAL FOR YEAR TWO (2009) DATED OCTOBER 14, 2008** |
| v. | ) | |
| DIANA BONTA, | ) | |
| Defendant. | ) | Honorable A. Howard Matz |
| | ) | Courtroom: 14 |

This Supplemental Report contains Special Master Richard Saletta's proposal to provide assistance to the Emily Q settlement effort for 2009, Year Two of the ongoing effort. This proposal follows one year (2008) of a highly successful process to achieve a comprehensive TBS plan for children in the Emily Q class. During Year One, a Nine-Point TBS Plan was developed by the parties and approved by the Court. This Year Two proposal describes steps Special Master Saletta will take to implement the Nine-Point TBS Plan to the satisfaction of the Court and the various parties involved.

First and foremost, I want to commend the parties and the Court for their achievement in reaching agreement and beginning the process of implementing the new Nine-Point TBS Plan.

1    The basic groundwork for implementation has been laid, the parties are moving forward

2    together, and the California Department of Mental Health has begun the process of notifying

3    counties, hiring expert contractors to assist the Department, and rolling out the various elements

4    of the plan.  This proposal describes the time and resources the Special Master will need to

5    continue the process and help the various parties and stakeholders – especially California's 56

6    Mental Health Plan counties – to implement the Nine-Point TBS plan at the direct services level.

7    The Special Master's original proposal for the Emily Q process outlined a three-phase

8    approach to resolving the Emily Q matter:  Phase I – Readiness, which has been completed;

9    Phase II – Design, which has been ordered by the Court; and Phase III – Implementation, which

10    has already begun and will continue through Court exit and will be sustained by CDMH

11    following Court exit to ensure continuing TBS for the Emily Q class.  This proposal identifies

12    specific tasks to be conducted and completed by the Special Master during 2009.

13

14    **Year Two:  Implementing the Nine-Point TBS Plan**

15    Per the November 14, 2008, Order of the Court, the Emily Q parties are beginning Phase

16    III – Implementation of the Nine-Point TBS Plan, which involves rolling out the plan, jointly

17    monitoring every step of implementation, analyzing the progress results, and making any needed

18    corrections to develop a lasting solution that will ensure the availability of appropriate and

19    effective TBS services to all children in the Emily Q class.

20    <u>Time required by the Special Master and Consultants during Year Two:</u>

21    Based on the amount of time needed to conduct the various Year One activities, it is

22    possible to predict with some precision the amount of time that will be required to conduct the

23    various implementation tasks during Year Two.  The following paragraphs break down the Year

24    Two tasks of the Special Master and his consultants in terms of their monthly, quarterly, and

25    yearly activities.

26    The Special Master will conduct the following activities during Year Two:

27    • Convene and oversee the Emily Q Settlement Team (formerly known as the Emily Q

28       Work Group);

29    • Visit and work with county Departments of Mental Health around the state;

30    • Participate in meetings with the California Department of Mental Health (CDMH), the

1      Emily Q plaintiffs, and other stakeholders;

2     •  Provide technical assistance to CDMH;

3     •  Monitor and advise the Accountability Structure Implementation Strategy (ASIS) group

4       and the Technical Assistance, Communications, Training (TACT) group;

5     •  Develop and submit quarterly Reports to the Court; and

6     •  Appear in Court as required to report progress and account for the Emily Q effort.

7   Each of these tasks is detailed below.

8      The Special Master will convene the Emily Q Settlement Team monthly to oversee the

9   ongoing Emily Q process.  With the shift to Phase III and the beginning of plan implementation,

10  leadership over the effort has transitioned from the Emily Q Work Group to CDMH as the

11  appropriate lead organization for TBS services; the Work Group has renamed itself the Emily Q

12  Settlement Team.  The Settlement Team will continue as the key oversight group for TBS

13  implementation as CDMH rolls out the Nine-Point TBS Plan.  The Special Master will be

14  assisted by two consultants, Steve Korosec and David Gray, who will co-facilitate the meetings.

15     The Special Master will travel to and work with various county Departments of Mental

16  Health to ensure their successful implementation of the Emily Q Nine-Point TBS Plan.  The

17  implementation plan identifies specific tasks and responsibilities that the county MHPs will be

18  required to perform as agents of CDMH, and CDMH has requested in-person assistance from the

19  Special Master to meet with the counties during the year.

20     The Special Master will participate in ad hoc meetings with CDMH, the Emily Q

21  Plaintiffs, and other stakeholders to ensure smooth and timely implementation of the Nine-Point

22  TBS Plan.  These ad hoc meetings may include CDMH, the plaintiffs, and other key stakeholders

23  involved in implementation.

24     The Special Master will provide direct technical assistance, guidance, and problem

25  solving to CDMH to ensure their successful implementation of TBS statewide.  The Special

26  Master's consultants will also provide periodic technical assistance to CDMH.

27     The Special Master will monitor and advise both the ASIS and TACT groups on a

28  quarterly basis to ensure their success in developing a TBS accountability structure (ASIS) that

29  addresses 1) outcomes, 2) a review process, and 3) utilization, in accord with the Emily Q Nine -

30  Point TBS Plan; and to ensure success in developing a TBS Training and Technical Assistance

1  Plan (TACT), corresponding training and documentation manuals, and an outreach plan to reach
2  all class members and provider organizations and agencies serving members of the Emily Q
3  class, in accord with the Emily Q Nine-Point TBS Plan.  The monthly TACT meetings will be
4  facilitated by the Special Master's consultants, and the Special Master will meet with both
5  groups quarterly to ensure that all parts of the plan are connecting to each other and moving at
6  the necessary pace.
7       The Special Master will prepare and submit quarterly reports to the Court regarding the
8  progress of the Emily Q matter.   The Special Master's consultants will provide input and assist
9  with report preparation.
10       The Special Master will appear before the Court as required to account for progress in the
11  Emily Q matter and to bring forward any emerging issues that require Court decisions or
12  guidance.
13  Special Master Monthly activities.
14       The Special Master estimates that the following amounts of time will be required for the
15  various monthly activities:
16    •  Convene and oversee the *Emily Q Settlement Team* – 11.0 hours per month
17    •  County visits – 20.0 hours per month
18    •  Meetings with CDMH, plaintiffs and other stakeholders – 10.0 hours per month
19       Total: 41.0 hours per month times 12 months = 492.0 hours
20  Special Master Quarterly activities.
21       The Special Master estimates that the following amounts of time will be required for the
22  various quarterly activities:
23    •  Monitor and advise the ASIS group – 4 hours per quarter
24    •  Monitor and advise the TACT group – 4 hours per quarter
25    •  Develop Court Reports – 8.0 hours per quarter
26       Total: 16 hours per quarter times 4 quarters = 64 .0 hours
27  Special Master Annual activities.
28       The Special Master estimates that the following amounts of time will be required for an
29  annual Court appearance:
30    •  Court appearance – 8.0 hours

4

1    Total: <u>8.0 hours</u> per year

2    <u>Total for all Year Two Special Master activities.</u>

3    The Special Master estimates that the Year Two activities described above will require a

4    total of 564.0 hours, billed at the rate of $150.00 per hour, for a Year Two total of $84,600.00.

5

6    <u>Assistance and support from consultants to the Special Master</u>

7    The Special Master will be assisted in several of these Year Two activities by his two

8    consultants, Steve Korosec and David Gray, whose help during Year One was essential to the

9    success of the effort. Their respective duties are listed below.

10   <u>Steve Korosec's monthly activities.</u>

11   • Facilitate the TACT group meeting – 4.0 hours per month

12   • Co-facilitate the Settlement Team meeting – 9.0 hours per month

13   • Provide technical assistance to CDMH – 4.0 hours per month

14   Total: 17.0 hours per month times 12 months = <u>204.0 hours</u>

15   <u>David Gray's monthly activities.</u>

16   • Facilitate the ASIS group meeting – 4.0 hours per month

17   • Co-facilitate the Settlement Team meeting and prepare minutes from the meeting – 10.0

18   hours per month

19   • Provide technical assistance to CDMH – 4.0 hours per month

20   Total: 18.0 hours per month times 12 months = <u>216.0 hours</u>

21   <u>David Gray's quarterly activities.</u>

22   • Assist with Court Reports – 6.0 hours per quarter

23   Total: 6.0 hours per quarter times 4 quarters = <u>24.0 hours</u>

24   The Special Master estimates that the Year Two professional services provided by his

25   consultants as described above will require a total of 444.0 hours, billed at the rate of $85.00 per

26   hour, for a Year Two total of $37,740.00.

27   The combined total of all proposed Year Two activities will be $115,260.00.

28

29   <u>Travel and Incidental Costs for Year 2:</u>

30   Special Master: I anticipate that Settlement Team Meetings will continue to take place in

5

1  Sacramento, within one hour of my office.  I will not be submitting an Invoice for this travel

2  expense.  I will be submitting an Invoice for travel expenses associated with county MHP visits

3  and any required Court appearance.

4      • At this time, I estimate air travel to Southern California 8 times- County MHP Meetings

5          and Court Appearance, Expenses: Airfare/parking- $1,680. (Includes airfare and

6          parking). .

7

8          Parent and Practitioner Settlement Team Participation:  I will continue to reimburse the

9  parent and practitioner members' travel expenses related to attending Settlement Meetings or ad

10  hoc task group meeting during Year Two.   Again, their employers have donated these members

11  time – only their travel expenses are included in this request for additional funding.

12          • Attendance at Settlement Team Meetings - 1 time monthly

13          • Ad hoc task group meetings – 4 times during year

14          The Special Master estimates travel expenses for Parent and Practitioner representatives

15          not to exceed $7,600.00.   I will be submitting an expense invoice for the Parent and

16          Practitioner participation with the Settlement Team.

17

18          In conclusion, I look forward to the opportunity of continuing to serve the Court as

19  Special Master during Phase III, Implementation of the Emily Q Nine-Point TBS Plan.

20

21

22  Dated: December 25, 2008                    Respectfully Submitted

23

24

25

26

27                                              Richard Saletta,  LCSW

28                                              Special Master