EDMUND G. BROWN JR.
Attorney General of California
PAUL REYNAGA
Supervising Deputy Attorney General
MELINDA VAUGHN
Deputy Attorney General
State Bar No. 120446
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-7873
  Fax: (916) 324-5567
  E-mail: Melinda.Vaughn@doj.ca.gov
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EMILY Q., et al.,** <br><br> Plaintiffs, <br><br> v. <br><br> **DIANA BONTA, et al.,** <br><br> Defendant. | Case No.: CV 98-4181 AHM (AJWx) <br><br> **NOTICE OF LODGING OF SPECIAL MASTER'S SIXTH REPORT** <br><br> Courtroom: 14 <br> Judge: The Honorable A. Howard Matz |

1   **TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF**

2   **RECORD:**

3       **PLEASE TAKE NOTICE** that Defendant (on behalf of the Special Master)

4   hereby lodges with the Court the attached Sixth Report in Response to Court's

5   Order Appointing Special Master Dated February 21, 2008.

6

7   Dated:  June 21, 2010                Respectfully submitted,

8                                           EDMUND G. BROWN JR.
        Attorney General of California

9                                           PAUL REYNAGA
        Supervising Deputy Attorney General

10                                          /s/

11                                          MELINDA VAUGHN
        Deputy Attorney General

12                                          *Attorneys for Defendant*

13  LA1998CV1047
    10583507.doc

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8

9

10

11   EMILY Q. et al.,                    )      CASE NO. CV 98-4181 AHM (AJWx)

12                                        )

13           Plaintiffs,                  )      **SIXTH REPORT IN RESPONSE**

14                                        )      **TO COURT'S ORDER APPOINTING**

15       v.                               )      **SPECIAL MASTER, FEBRUARY 21, 2008**

16                                        )

17                                        )

18                                        )

19   DIANA BONTA,                         )

20                                        )

21           Defendant.                   )      Honorable A. Howard Matz

22                                        )      Courtroom 14

23                                        )

24

2

1
2
3
4
5
6
7
8
9
10
11
12
13    **June 2010 – Emily Q Special Master's Report**
14

3

1
2
3                                    **Table of Contents**
4
5
6   **Summary of Accomplishments – December 2009 to June 2010**                **4**
7          Settlement Team Activities                                          4
8          CDMH Implementation of Emily Q Nine Point Plan                      5
9          Special Master Activities                                           5
10
11  **Special Master Observations**                                            **6**
12         California Context and Service Environment                          6
13         Data Lag                                                            7
14         CMHDA Re-engaging with the Settlement Team                          7
15         Final Six Months Prior to Court Exit                                7
16
17  **July through December 2010 Budget Proposal**                             **8**
18
19  **Special Master Recommendations to the Court**                            **10**
20
21
22

1   As special master for the Emily Q matter, I am pleased to provide the Court with the following

2   information that summarizes activities and accomplishments of the Emily Q Settlement Team

3   and the California Department of Mental Health (CDMH) in implementing the Emily Q Nine

4   Point Settlement Plan.

5

6   **Summary of Accomplishments – December 2009 to June 2010**

7   The Emily Q Settlement Team and CDMH have helped promote implementation of the Emily Q

8   Nine Point Plan.  In addition, the Special Master has conducted several key activities regarding

9   MHP certification.  Key accomplishments are summarized below.

10

11   Settlement Team Activities

12   The Emily Q Settlement Team has continued to meet monthly to provide oversight, guidance,

13   refinement, and support to CDMH during the Emily Q Nine Point Plan implementation phase.

14

15   Specific key activities of the Settlement Team include:

16   • *Monthly daylong meetings in Sacramento* to review plan progress and provide support to

17   CDMH staff in implementing the plan.

18   • *Reviewing and approving the work products of the Super TACT (TBS Accountability*

19   *Communications and Training) work group and CDMH.*  Settlement Team members

20   have been actively involved in overseeing completion of the TBS Documentation Manual

21   version 2.0, which was released in October 2009, and the Coordination of Care / Best

22   Practice Manual which is scheduled for release in June, 2010.

23   • *TBS Equivalent Services.*  The Settlement Team helped CDMH and the Special Master

24   complete guidelines that the Special Master is now using to determine whether or not

25   non-TBS services delivered by a county MHP may be counted toward meeting the four

26   percent utilization benchmark.

27   • *MHP Certification Protocol.*  The Settlement Team has worked with the Special Master

28   to finalize the criteria for certifying that Level II MHPs have satisfied the TBS utilization

29   and quality requirements of the Nine Point Plan.

30   • The *California Mental Health Directors Association* has rejoined the Settlement Team

5

1       through representation by the Sonoma County Director of Mental Health.

2

3       CDMH Implementation of the Emily Q Nine Point Plan

4       CDMH has submitted the *Therapeutic Behavioral Services County Mental Health Plan 2009*

5       *Progress* Report to the Court.  As Special Master, I worked alongside the department's senior

6       staff as they prepared this annual report, and I concur with CDMH's findings.  The Settlement

7       Team reviewed several drafts of the Progress Report and has commented and offered suggestions

8       to CDMH as it developed this document.  The 2009 Progress Report accurately describes the

9       MHP's efforts and accomplishments toward fulfilling the requirements of the Nine Point Plan.

10     CDMH lead representative Sean Tracy, CDMH Director Dr. Stephen Mayberg, and their staff

11     have done an excellent job in positioning the Progress Report as a guiding document for tracking

12     MHP progress into the future.  CDMH is working to assume full responsibility for sustained

13     implementation and updating of the Nine Point Plan following Court exit from the matter.

14

15     CDMH also accomplished the following:

16        •   Continued to convene the Super TACT work group monthly meetings.

17        •   Completed the Small County Strategy and submitted it to the Court in February 2010.

18        •   Worked with its training contractor CiMH to provide various training sessions in Tulare

19            and Kern Counties, Los Angeles County, and Monterey County, with forthcoming

20            training sessions in San Diego and Los Angeles counties.

21        •   Worked with its data contractor APS Healthcare to further develop and refine the Track

22            I, II, and III data reports.

23        •   Completed the first stages of developing a Youth and Family Strategy in May 2010.

24        •   Worked with the Settlement Team and the Court to modify the county MHP Local

25            Conversation discussion questions to reflect advances the MHPs have made in their

26            local TBS utilization efforts.

27        •   Updated the MHP Progress Report to monitor and report about the MHP TBS activities

28            in 2010.

29

1  Special Master Activities

2  In April, I traveled to San Diego County, along with one of my assistants and a representative of

3  CDMH, to review case files for the San Diego Comprehensive Assessment and Stabilization

4  Service (CASS) Program as possible TBS Equivalent Services. Our team determined that 60

5  percent of the children served through CASS received TBS Equivalent services and that these

6  children can be counted toward the county's four percent benchmark. Following this "test" case,

7  CDMH arranged a Webinar conference call with the Level II MHPs to explain and promote both

8  the TBS Equivalent and Certification processes for the Level II MHPs. In addition, the Special

9  Master:

10  • Attended the CMHDA Small County Directors meeting, accompanied by CDMH, and

11  presented the collaborative TBS Small County Strategy that has been developed by the

12  Small County Committee and the settlement Team.

13  • Attended a Child Welfare Council meeting to observe and monitor relevant foster

14  care/children's mental health issues.

15  • With CDMH, Plaintiffs, and Settlement Team representatives, participated as a Panel

16  Member for the California Mental Health Advocates for Children and Youth

17  (CMHACY) Annual Conference to educate practitioners, families, and youth about the

18  Interest Based Decision Making Process and the progress of the Emily Q Nine Point

19  Plan.

20  • Completed the Certification Protocol and started the process for rolling this out,

21  beginning in June 2010. I also anticipate that, in the next few months, I will certify the

22  five exempt counties whose utilization was above four percent prior to implementation

23  of the Nine Point Plan, and will most likely be able to certify other Level II MHPs that

24  have increased TBS utilization and improved quality following implementation of the

25  plan.

26

1

2

3

4 **Special Master Observations**

5 In my role as special master to the Emily Q effort, I would like to report several key observations

6 and findings regarding the Nine Point Plan rollout effort from December 2009 through June

7 2010.

8

9 California Context and Service Environment

10 As reported previously, the California service delivery environment is experiencing

11 unprecedented difficulties that impact all child and family services including TBS. Another year

12 of enormous budget deficits and state and local mental health cutbacks have resulted in highly

13 volatile service environments and extraordinary uncertainties in all the MHPs. Nonetheless,

14 most counties are increasing their TBS efforts and are showing improvements in TBS utilization.

15 I am especially impressed with the efforts of local county children's mental health managers and

16 the private service providers who are driving significant structural changes in local TBS

17 utilization. Interestingly, the Governor's May Revised Budget includes increased spending on

18 EPSDT services, the basis of TBS funding, which suggests that the Nine Point Plan effort likely

19 will not be adversely impacted by the impending budget cuts.

20

21 Data Lag

22 California implemented a new Short-Doyle mental health data reporting system in Spring 2010,

23 which will ultimately bring efficiencies to the Medi-Cal claims payment system, provide

24 enhanced HIPAA protections, and create a tool for timely payments to MHPs. This new claims

25 payment system, known as Short-Doyle/Medi-Cal II, was a collaborative effort between the

26 Department of Health Care Services, Department of Alcohol and Drug Programs and CDMH.

27 As the system was fully implemented by all 56 MHPs in March 2010, a Medi-Cal claims data

28 and reporting problem was identified. The State Departments are working to resolve this system

29 issue, but currently there are lags in data reports from CDMH about TBS claims. The latest full

30 month data available from all MHPs is December 2009. CDMH reports that it is expected to

1   have the data collection and reporting system for Medi-Cal claims back on line in July 2010.

2

3   CMHDA Re-engaging with the Settlement Team

4   More than a year after the CMHDA representatives left the Settlement Team, CMHDA has

5   rejoined by assigning the Sonoma County Director of Mental Health as county representative to

6   the Settlement Team.  In addition, the Small County Strategy and the TBS Equivalent

7   Determination effort have created positive new linkages with TBS staff in the counties, and

8   especially with CMHDA.  Long-term differences between CMHDA and CDMH over issues

9   beyond TBS continue to complicate relationships at the mental health director level, but the "new

10   TBS culture" generated by the Nine Point Plan rollout effort has greatly improved relationships

11   with the MHPs.

12

13   Final Six Months Prior to Court Exit

14   As the deadline for Court Exit approaches, CDMH and the Settlement Team are discussing ways

15   to help the Level II MHPs satisfy the requirements for certification.  Some possible strategies

16   include individualized MHP utilization approaches, increased review of potential TBS

17   Equivalent Services, methods to determine if an MHP is on a trajectory to reach the benchmark

18   by 2012, and steps MHPs must take to request and receive certification.  As noted above, there

19   are barriers to data reporting that may complicate the certification process, although I am

20   confident that these can be resolved through a county-by-county evaluation process.  I anticipate

21   increased requests for Special Master visits to counties to review their utilization data and to

22   certify them as having completed the Nine Point Plan requirements.

23

24   CDMH and the Settlement Team have demonstrated remarkable leadership and commitment to

25   assist the MHPs throughout the rollout period.  However, much remains to be done in the

26   remaining six months before Court exit; it will require considerable effort at the state and local

27   levels to ensure that the exit requirements are met by December 2010.

28

1    **July through December 2010 Budget Proposal**

2    Budget: July 1–December 31, 2010 – $51,916.00

3              The special master proposes the following budget, including travel and incidental

4              expenses, for the first six months of FY 2010-2011, anticipating the Court's exit

5              December 31, 2010.

6

7    Special Master and Consultants: July 1–December 31, 2010 – $47,500.00

8    The special master will conduct the following activities:

9              •   Convene and oversee the Emily Q Settlement Team.

10             •   Visit and work with county departments of mental health/MHPs to implement

11                 the Nine Point Plan.  This includes certification of a county MHP's 4%

12                 benchmark and/or TBS equivalent certification.

13             •   Participate in meetings with CDMH, the Emily Q plaintiffs, and other

14                 stakeholders.

15             •   Provide technical assistance to CDMH.

16             •   Monitor and advise SuperTACT, the combined Accountability Structure

17                 Implementation Strategy, and Technical Assistance, Communications,

18                 Training groups.

19             •   Develop and submit reports to the Court as required.

20             •   Appear in Court as required to report progress and account for the Emily Q

21                 effort.

22

23   Assistance and support from consultants to the special master:

24             •   Co-facilitate the Settlement Team meeting and prepare written summaries.

25             •   Co-facilitate SuperTACT group meetings.

26             •   Provide technical assistance to SuperTACT.

27             •   Provide technical assistance to CDMH.

28             •   Assist with county MHP certification of TBS equivalent services.

29             •   Data analysis and interpretation.

30             •   Assist with Court reports.

1

2          The special master will be reimbursed at $150.00 per hour and consultants

3          reimbursed at $100.00 per hour.

4   Travel and Incidental Costs - July 1–December 31, 2010 – $2,166.00

5     Special Master:

6              •   I anticipate that Settlement Team meetings will continue to take place in

7                  Sacramento, within one hour of my office.  I will not be submitting an invoice

8                  for this travel expense.

9              •   I will be submitting an invoice for travel and incidental expenses associated

10                  with county MHP visits for the purposes of TBS Certification and/or

11                  Determination of TBS Equivalency or consultation and any required Court

12                  appearance.  At this time, I estimate air travel to Southern California three

13                  times for special master and consultant meetings with county MHPs, and for

14                  one Court appearance.  Expenses will include airfare, parking, and – when

15                  necessary for MHP/County site visits requiring more than one day – lodging

16                  expenses will be included.

17   Parent and Practitioner Settlement Team participation – $2,250.00

18              •   I will continue to reimburse the parent and practitioner members' travel

19                  expenses related to attending Settlement Team meetings or ad hoc task group

20                  meetings.   As noted in earlier reports, their employers have donated these

21                  members' time – only their travel and incidental expenses are included in this

22                  request for additional funding.

23              •   I will be submitting an expense invoice for the parent and practitioner

24                  participation with the Settlement Team.

25

1
2
3
4
5     **Special Master Recommendations to the Court**
6     In spite of the chaotic government environment that is currently dominating service delivery in
7     every county throughout California, the planning partners continue to move the plan forward,
8     and many county and local provider staffs are responding positively to the Nine Point Plan,
9     helping shift plan implementation from the state to the local level.  In this regard, I make the
10    following recommendations to the Court at this time:
11        • Remain on course with the plan time line, continue to support CDMH and Settlement
12          Team efforts, and watch and wait as the counties strive to reach the TBS utilization
13          benchmark.
14        • Approve the special master's July 1 through December 31, 2010 budget proposal.
15
16    In closing, I would like to again thank the Court for affording me the privilege of serving as
17    special master for the Emily Q case.
18
19
20    Dated:  June 15, 2010                    Respectfully Submitted
21
22                                                        /s/
23
24                                             Richard Saletta, LCSW

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Emily Q., et al. v. Diana Bonta, et al.**

Case No.:    **CV 98-4181 AHM (AJWx)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On June 21, 2010, I served the attached **NOTICE OF LODGING OF SPECIAL MASTER'S SIXTH REPORT** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Allison Wheeler
Mental Health Advocacy Services
3255 Wilshire Boulevard, Suite 902
Los Angeles, CA  90010

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 21, 2010, at Sacramento, California.

| Patty Conway | |
| --- | --- |
| Declarant | Signature |

LA1998CV1047
10583510.doc