ECF DIVIDER

FINAL REPORT IN RESPONSE TO COURT'S ORDER APPOINTING SPECIAL MASTER, FEBRUARY 21, 2008

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY Q. et al., | CASE NO. CV 98-4181 AHM (AJWx) |
| Plaintiffs, | **FINAL REPORT IN RESPONSE** |
| | **TO COURT'S ORDER APPOINTING** |
| v. | **SPECIAL MASTER, FEBRUARY 21, 2008** |
| DIANA BONTA, | |
| Defendant. | Honorable A. Howard Matz |
| | Courtroom 14 |

1
2
3
4
5
6
7
8
9
10
11
12
13    **May 2011 – Emily Q. Special Master's Final Report**
14

1
2
3                                  **Table of Contents**
4
5
6     **Introduction and Purpose of this Report**                                        5
7            The Emily Q. Settlement Team                                                5
8
9     **Instructions in the Appointing Order**                                           6
10
11    **Special Master's Review of CDMH Completion of Points One Through Eight**         7
12           Point One                                                                   7
13           Point Two                                                                   8
14           Point Three                                                                 8
15           Point Four                                                                  10
16           Point Five                                                                  11
17           Point Six                                                                   11
18           Point Seven                                                                 11
19           Point Eight                                                                 12
20
21    **Point Nine – Court Exit**                                                        12
22           County MHP Certification                                                    12
23           Striving to increase TBS utilization                                        14
24           Certification based on trajectory to reach the benchmark                    15
25           Statewide TBS utilization data                                              15
26           Additional criteria for certifying the 18 MHPs that achieved the
27                  four percent benchmark                                               17
28           The nine Level II MHPs that did not meet certification criteria             18
29           Level I MHP Performance                                                     19
30           State Requirements for Court Exit                                           19

| | | |
|---|---|---|
| 1 | | |
| 2 | **Special Master's Recommendations Regarding Court Exit** | **22** |
| 3 | Proposed dates for the next Court appearance | 22 |
| 4 | | |
| 5 | **The Post Exit Environment in California** | **22** |
| 6 | | |
| 7 | **Exhibits** | **25** |
| 8 | Exhibit A: Members of the Emily Q. Settlement Team | |
| 9 | Exhibit B: County MHP Progress Reports | |
| 10 | Exhibit C: County MHP and State Data Dashboards – Levels I and II | |
| 11 | Exhibit D: County MHP and State TBS Certification and Trajectory Letters | |
| 12 | Exhibit E: Special Master's County MHP TBS Equivalent Notices | |
| 13 | | |
| 14 | | |

**Introduction and Purpose of this Report**

In this report, which I believe will be the Special Master's final report to the Court for the Emily Q. matter, I am pleased to offer my recommendations regarding Court exit from the matter along with findings of fact, parting observations, and recommendations for the future of therapeutic behavioral services for children in California. This report begins by citing instructions provided to me in the February 21, 2008 Court's Order Appointing Special Master. This is followed by my findings regarding California Department of Mental Health (CDMH) and its agents, the county Mental Health Plans (MHPs), completion of the Nine Point Plan. Based on these findings, I recommend Court exit from the Emily Q. matter. However, due to changes to the state and county service delivery structure proposed under Governor Brown's realignment strategy, I feel compelled to state certain cautions and concerns I hold regarding the post-exit service delivery environment in California, especially in terms of how realignment could challenge sustainability of Therapeutic Behavioral Services (TBS) delivery statewide.

The Emily Q. Settlement Team

I would once again like to acknowledge the Emily Q. Settlement Team for its professionalism and enduring commitment to getting the job done. The following is a list of 12 representatives who make up the Settlement Team (See Exhibit A for a complete list of participant names and titles):

- *California Department of Mental Health*: Assistant Deputy Director, Community Services Division; Chief, Program and Policy Development Branch; and Chief and Senior Counsels;
- *Department of Health Care Services*: Chief, Medi-Cal Benefits Waivers Analysis and Rates; and Senior Counsel;
- *Representing the Class*: Disability Rights California, Senior Counsel; and Mental Health Advocacy Services, Executive Director;
- *Department of Justice, Office of the Attorney General*: Deputy Attorney General;
- *California Mental Health Directors' Association (CMHDA)*: Mental Health Director for Sonoma County;
- *Representing the Class perspective*: A Family Partner from a TBS and Wrap Around

agency who also is the parent of a child that has been in the public mental health system; and a private sector mental health practitioner who delivers TBS to children and families through county contracts.

**Instructions in the Appointing Order**

There are two key instructions from the February 21, 2008 Court Order Appointment of Richard Saletta as Special Master for the Emily Q. matter that have framed my efforts over the past three years as Special Master and that were the cornerstone of the Nine-Point Plan. This first instruction refers to the requirements placed on the state:

> Judgment was entered in this matter on May 11, 2001. The Judgment requires defendant, the Director of the California Department of Health Care Services, and her agent, the California Department of Mental Health (CDMH), to ensure that members of the certified class have access to Therapeutic Behavioral Services (TBS), a mental health service for children and youth which has been found to have great benefit for class members. Among other aspects of the remedial scheme, the Judgment required CDMH to identify county mental health plans (MHPs) with "disproportionately low TBS utilization" and take corrective actions. (Paragraph 1)

As detailed in the following sections of this report, it is my conclusion that the state defendant has fulfilled the requirements of this judgment by both ensuring class member access to TBS, and by taking corrective actions for the MHPs with disproportionately low TBS utilization.

A second instruction from the Appointing Order requires the following:
> The focus of the Special Master shall be on the need to specify a minimum TBS utilization rate or rates; the need to develop exit criteria; the need to develop a qualitative review process; and the need to assure compliance after this case has been terminated. (Paragraph 13)

Through the strong effort of CDMH and the Settlement Team as represented in the Emily Q. Nine Point Plan, I believe my obligation to accomplish these four key tasks has been fulfilled. A sufficient and significant number of the MHPs have increased TBS utilization to the four percent

benchmark; exit criteria have been developed and met; a qualitative review process has been implemented in 53 of the 56 MHPs; and CDMH is committed to sustaining and assuring compliance with the Nine Point Plan after the case is terminated.

**Special Master's Review of CDMH Completion of Points One Through Eight**

My prior report, the Seventh Report in Response to Court's Order Appointing Special Master, details the actions that have been taken to fulfill Points One through Eight of the Nine Point Plan, and I will not repeat those points here. I will, however, make note of several key additional findings for each point and summarize findings that have emerged following that report.

To begin, I find that the California Department of Mental Health and its MHPs have successfully implemented Points One through Nine of the Nine Point Plan. In this regard, I especially commend the efforts of Sean Tracy, Assistant Deputy Director of the Community Services Division, CDMH Director Stephen Mayberg, and their staff for their leadership, thoroughness, enthusiasm, engagement, and transparency in implementing the Nine-Point Plan. The CDMH team effort, in partnership with the many others involved in the rollout process, has yielded remarkable success in advancing TBS for children in the Emily Q. class and their families statewide. An unintended positive consequence of CDMH's successful implementation of the Nine Point Plan has been its effect on the usual and customary practices at the provider and family levels. By promoting and supporting the advancement of positive behavioral supports as an essential treatment intervention, more and more treatment plans are including positive behavioral supports as a key treatment.

Point One – Reduce Administrative Requirements: **Accomplished**

- CDMH has reduced and streamlined the TBS administrative requirements, which has resulted in promoting increased TBS statewide. These new requirements have been clearly written into the *TBS Documentation Manual* and they have been incorporated into the efforts of the CDMH Audit and Compliance Unit. Many MHPs have received training in documenting TBS, and the TBS administrative requirements have been successfully implemented statewide. CDMH has not reintroduced or incorporated new

administrative requirements that would deter from greater access to and utilization of TBS. CDMH is committed to maintaining this approach of eliminating administrative burdens in the future.

Point Two – Clarify Eligibility Requirements: **Accomplished**

- CDMH has clarified the TBS eligibility requirements. Service selection based on the clinical needs of the child, rather than on resource availability or service limitations in the MHP, has greatly improved in many MHPs, thereby opening and increasing class member access to TBS services. CDMH has not proposed any changes to the class definition or eligibility requirements.

Point Three– Establish an Accountability Process and Structure: **Accomplished**

- CDMH has successfully implemented the TBS accountability effort in the majority of MHPs and continues to promote efforts to permanently establish accountability in TBS planning and decision-making at the state and county levels. Fifty-three of the 56 MHPs have substantially complied with Point Three. One Level Two MHP (Merced) and two Level I MHPs (Colusa and Modoc) will require additional support and attention from CDMH.
- A key aspect of the accountability effort has been the unprecedented level of transparency created by the CDMH Emily Q. Web page through its MHP Progress Report and Data Dashboard. This effort has raised the standard of accountability for the department through its strong commitment to openness and to sustained transparency into the future. I commend CDMH and its contractor APS Healthcare for their joint development of these clear, useful, accurate, responsive, and user-friendly reports.
- Although it is in the early stages of development and implementation, the TBS Family and Youth Strategy shows promise to increase state and, more importantly, local accountability for accessing and improving the delivery of TBS. The TBS Family and Youth Strategy Core Planning Team is comprised of representatives from CDMH, the California Alliance, California Institute of Mental Health (CiMH), the California Mental Health Directors Association (CMHDA), the California Youth Empowerment

Network (CAYEN), the California Council of Community Mental Health Agencies (CCCMHA), and United Advocates for Children and Families (UACF), and also includes a parent partner advocate who is a member of the Emily Q Settlement Team. The Core Planning Team designed a strategy that is based on a framework consisting of information and communication; engaging with parents and parent organizations; partnering with other agencies; family, youth, and MHP training; and evaluation.

- Family and youth participants and representatives in the statewide TBS effort have reported strong interest in and satisfaction with the accountability effort and with the accessible and useful Web-based information available to them. As noted in various sections of the *CDMH 2010 Annual Assessment*, family and youth participation and collaboration at the state and MHP levels has reached a remarkably high level, far above any previous efforts that I have seen to engage and mobilize families and youth in any mental health initiative.

- The TBS Small County Strategy was developed by the Settlement Team to address challenges faced by small and rural counties in providing TBS, and to assist in increasing TBS utilization in these regions. Jaye Vanderhurst, Napa County Mental Health Director, representing CMHDA, has been instrumental in supporting the implementation of the Small County Strategy. At each monthly CMHDA Small Counties Committee meeting, Director Vanderhurst provides an update on the Small County Strategy and the status of the Nine Point Plan. Her participation and commitment have been critical in promoting the objectives of the strategy and in acquiring important feedback from those on the ground level in the small county MHPs. Director Vanderhurst participated in the initial planning of the upcoming small county TBS training and provided valuable insight into the needs of the small counties.

Implementation of the Small County Strategy shows remarkable growth between 2009 and 2010 among the 29 small and rural counties to implement the Nine Point Plan. The 2009 MHP Progress Report developed by CDMH reported that 13 small counties were on track and making strong progress on implementing the plan; one small county was making some progress on implementing the Plan; and 15 of the small counties were not implementing the plan and required further technical assistance from

CDMH. <u>One year later</u>, efforts of the small and rural counties in implementing the Nine Point Plan have significantly improved: the 2010 MHP Progress Report noted that 23 of the 29 small counties are on track and making strong progress on implementing the plan; four small counties are making some progress on implementing the plan; and two small counties are not implementing the Plan and may require further technical assistance from CDMH.

- Appendix C of the Nine Point Plan identified data comparisons that were intended to help determine the effectiveness of TBS and also to support local TBS discussions, including pre-post comparisons for hospitalization, RCL 12+ placements, and other mental health services received. Though well intended, these comparisons proved to be very problematic. For example, through tremendous effort CDMH and APS were able to construct an analysis of hospitalization data prior to and following TBS services that suggested significant differences following TBS; however, on closer analysis, there was so much uncertainty surrounding the data, the Settlement Team decided not to include this analysis in the Web-based dashboard. There was great concern that these analyses with ambiguous findings would confuse rather than contribute to the broader discussion about TBS, so the effort was dropped in order to better use APS's limited contract resources. With regard to pre-post RCL 12+ placement data, CDMH and CDSS were able, for the first time, to combine and match data for Emily Q. class members across both departments' information systems for the years 2006-2008, but the combined data did not reach far enough back in time to support longitudinal analysis of pre-TBS placement. Consequently, this portion of the accountability plan was not completed per consensus agreement by the Settlement Team. As Special Master, I supported the decision not to pursue these comparison data analyses.

Point Four – Establish a TBS Best Practices Approach: **Accomplished**
- The CDMH *TBS Coordination of Care and Best Practices Manual*, which was developed through a broad array of contributors, clearly articulates the best practice approach to TBS. This manual, in combination with CDMH and MHP training efforts, offers great promise in sustaining the TBS effort statewide and has set a new higher

standard for state leadership in promoting best practice approaches and coordination of care.

Point Five – Multi-Agency Coordination Strategy: **Accomplished**

- CDMH has promoted multi-agency coordination at the MHP level through the accountability process developed in Point Three.
- CDMH also is to be commended for its effort in engaging and mobilizing family and youth as partners in the statewide TBS Nine-Point Plan effort. This remarkable effort is gaining strength in many local communities and promises to significantly and positively impact CDMH-community relations in perhaps unprecedented ways. Similarly, CDMH's efforts to promote the TBS Small County Strategy, in partnership with CMHDA, promises a sustained statewide effort.

Point Six – Statewide TBS Training Program: **Accomplished**

- CDMH and its training contractor CiMH have developed an excellent and well-received TBS training program that incorporates the *TBS Documentation Manual* and the *TBS Coordination of Care and Best Practices Manual*. Although not all MHPs have participated in this training, CDMH has offered trainings statewide and has demonstrated commitment to identify new training opportunities and to address unmet training and resource needs. CDMH and CiMH continue to hold monthly technical assistance conference calls with the Level II MHPs. On occasion, Level I MHPs have joined the calls. The ten Level II counties identified in the Nine Point for focused attention have been the strongest group of participants throughout the past 14 months. On average, 15 MHPs participate in each monthly conference call.
- As noted in Point Three above, efforts are currently underway to increase outreach and training to the small counties.

Point Seven – Technical Assistance Manuals: **Accomplished**

- As noted earlier in this report, CDMH has developed and promoted two excellent manuals – The *TBS Documentation Manual* and the *TBS Coordination of Care and Best*

*Practices Manual.* These superlative manuals set a high standard within CDMH for the type of leadership the state is capable of providing, especially in the way these "state-owned" manuals strengthen the capacity of the MHPs and private providers to fulfill the service delivery expectations embedded in the Nine-Point Plan.

Point Eight – Outreach Strategy:  **Accomplished**

- The key medium of TBS outreach has been the Emily Q./TBS Web page on the CDMH Web site. This effort represents the highest quality and state of the art effort in making clear, consistent, useful, and relevant information available to all who are interested in TBS. As noted in the *CDMH 2010 Annual Assessment*, the site has been visited several hundred thousand times and has received very positive reviews. Family and youth partners in the Nine-Point Plan process have been particularly positive in their reviews of the array of qualitative and quantitative information available to them via the Web page.
- In recent months, CDMH has added a page to the Emily Q. Web site dedicated to the TBS Family and Youth Strategy. This page includes information about conference calls, a variety of useful issues, and links that are provided by partners and call participants.

In summary, and as noted in my November Seventh Report to the Court, I am pleased to report that CDMH and the MHPs have fulfilled the requirements of Points One through Eight of the Nine Point Plan.

**Point Nine – Court Exit**

To satisfy Point-Nine *"Exit to Success"* the Court required performance by the state and by its agents, the county Mental Health Plans. This section of the Special Master's Final Report summarizes my findings regarding MHP and state certification as having fulfilled the requirements of the Nine Point Plan.

County MHP Certification

The Court's April 23, 2009 Order Approving Exit Plan Re: Criteria for Performance and

Termination of Jurisdiction directed the Special Master as follows:

> The 27 large- and medium-sized MHPs are required to engage in significant effort to fulfill the Court-ordered Nine-Point Plan. This effort will include striving to increase TBS utilization, implementing quality TBS, engaging policy leaders and other key local stakeholder agencies in the TBS effort, engaging with professional staff and contract providers for TBS training, and engaging with local family members and youth who must be involved in the local TBS effort in meaningful and influential ways. (April 23, 2009 Exit Plan, page 8.)

In addition, the Order specified:

> <u>Four Percent Benchmark for TBS utilization</u>
>
> With this exit plan, the Court establishes a TBS utilization benchmark for the Level II and exempted MHPs at 4% as calculated by the number of children in an MHP receiving TBS divided by the number of children in that MHP who are receiving EPSDT Mental Health services in a given year. This TBS utilization benchmark will apply to the 27 large- and medium-sized MHPs, which represent all 22 Level II MHPs plus the 5 exempted MHPs; together, these 27 MHPs serve approximately 92% of the children who receive EPSDT Mental Health services in the State of California.
>
> <u>Strive to Increase TBS Utilization to the 4% Benchmark</u>
>
> All large- and medium-sized MHPs are strongly encouraged to achieve the 4% benchmark. For the Court to terminate jurisdiction by December 31, 2010, two-thirds (18) of the 27 large- and medium-sized MHPs must have reached the 4% TBS delivery threshold. If the Special Master determines that all other requirements are met, the Special Master shall certify an MHP that has achieved the 4% benchmark. If an MHP has met all other requirements, but has not achieved the 4% benchmark, the Special Master shall certify the MHP if the MHP demonstrates to the Special Master that it offers services equivalent to therapeutic behavioral services to Emily Q. class members, and/or demonstrates that the MHP is on a trajectory to achieve the 4% benchmark no later June 30, 2012. (April 23, 2009 Exit Plan, pages 9-10.)

The primary certification requirement of the Exit Plan is that an MHP reach the four percent benchmark for TBS delivery. However, there are additional performance requirements that the MHPs must meet to qualify for certification: quality TBS, administration and data management, and outreach to and engagement of various partners and stakeholders. In order to determine whether or not these various requirements have been met, I utilized the following eight information sources for gathering input and making observations:

- The MHP data dashboards.
- The TBS MHP Progress Reports.
- Periodic reports to the Court by the Special Master and the CDMH Annual Assessments.
- Special Master site visits to the MHPs.
- Direct communication between the Special Master and the MHPs.
- Settlement Team and SuperTACT meetings.
- TBS training and technical assistance to the MHPs.
- MHP participation in the Level II conference calls.

Together, these sources provided a multifaceted perspective on MHP performance.

The following discussion summarizes my findings with regard to certifying the Level II MHPs as having fulfilled the Court ordered Nine Point Plan.

Striving to increase TBS utilization

The TBS Data Dashboards show that, among the 27 Level II MHPs, <u>18 have satisfied the four percent benchmark requirement</u> either through TBS services, a combination of TBS and equivalent services, or a trajectory to reach the benchmark. In addition, <u>seven MHPs have demonstrated progress</u> toward the benchmark although they did not reach it. And <u>two MHPs have demonstrated low or declining performance</u> with regard to increasing TBS utilization. The following chart identifies the Level II MHPs by level of performance. For complete information describing TBS utilization for all 56 MHPs, please refer to Exhibit C: State and County MHP Data Dashboards – Levels I and II.

| |
|---|
| **Achieved the benchmark**<br><br>**(TBS alone)** Contra Costa, San Luis Obispo\*, San Mateo\*, Santa Barbara, Santa Clara, Sonoma\*, Ventura.<br><br>**(TBS and equivalent services)** Butte, Marin, Orange, Placer/Sierra, Riverside, Sacramento\*, San Diego, San Francisco, Stanislaus.<br><br>**(Trajectory)** Los Angeles, Santa Cruz. |
| **Demonstrated significant progress but did not achieve the benchmark**<br><br>Alameda, Kern, Merced, Monterey, San Bernardino, Solano, Tulare. |
| **Demonstrated low or declining performance toward achieving the benchmark**<br><br>Fresno, San Joaquin. |

\*Four MHPs (San Luis Obispo, San Mateo, Sonoma, and Sacramento) have met the four percent benchmark using a combination of state TBS claims data plus additional county-reported TBS data for CY 2010. The difference in state and county TBS totals for these counties is the result of a "data lag" caused by the incomplete implementation of new Short-Doyle Phase II Medi-Cal claiming software in these counties. It is anticipated that these county and state TBS totals will be reconciled no later than June 30, 2011.

Certification based on trajectory to reach the benchmark

As noted on the chart above, two MHPs, Los Angeles and Santa Cruz, have not yet achieved the four percent TBS utilization benchmark, but have made sufficient progress toward it and have provided written guarantees and commitments to the Special Master that, through continued effort, they will reach the benchmark by June 30, 2011. Copies of the certification letters for Los Angeles and Santa Cruz, which describe the county methodologies and trajectory commitments, are included in Exhibit D: County MHP and State TBS Certification and Trajectory Letters.

Statewide TBS utilization data

Although the exit certification requirements apply only to the 27 Level II MHPs, it is